2012 WY 139

**In the Matter of the ESTATE OF John H. HIBSMAN, Jr., Deceased:**

**Jason Hibsman, Appellant (Former Personal Representative),**

v.

**Robert "Bob" Mullen, Appellee (Personal Representative),**

and

**Trudy Hibsman, Rebecca Hibsman and Emily Hibsman, Appellees (Heirs).**

No. S–12–0036.

Supreme Court of Wyoming.

Oct. 31, 2012.

Appellant has presented no arguments to this Court that the testimony of Mr. Neubauer violated this rule.

Representing Appellant: M. Gregory Weisz and Jodi D. Shea of Pence and Mac-Millan, LLC, Laramie, WY. Argument by Mr. Weisz.

Representing Appellees: Robert Mullen, of Casper, WY. No appearances entered for Trudy, Rebecca, and Emily Hibsman.

Before KITE, C.J., and GOLDEN *, HILL, VOIGT, and BURKE, JJ.

HILL, Justice.

[¶ 1]   Jason Hibsman (Appellant) appeals an order issued by the district court finding prima facie evidence for the Personal Representative of John H. Hibsman, Jr.'s estate to proceed in recovering "not less than $137,566.46" from Appellant. Finding that this Court does not have jurisdiction to hear this appeal, it is dismissed.

### ISSUE

[¶ 2]   Appellant states one issue:

1. Whether there was sufficient evidence presented at the September 9, 2011, hearing to find that [Appellant] concealed, embezzled, conveyed away and/or disposed of monies and other property of the Estate and whether the evidence presented at the September 9, 2011 hearing supported the judgment entered against [Appellant] in an amount not less than $137,566.46.

### FACTS

[¶ 3]   John H. Hibsman, Jr. died testate on June 22, 2008. His Last Will and Testament named his four adult children as his heirs. The will was admitted to probate by the district court on December 23, 2008 and, consistent with his directive, his son Jason was named executor and personal representative of the estate, albeit six months after the elder Mr. Hibsman had passed. During those six months, a dispute had ensued with

---

* Justice Golden retired effective September 30,   2012.

another heir, Appellant's sister Trudy Hibsman, who contested Appellant's appointment as Personal Representative.

[¶ 4] After his appointment, Appellant hired attorney Michael Zwickl (now deceased) to represent him. The estate contained two properties which Appellant renovated and then petitioned the court for permission to list and sell. Both properties sold, as did two of the decedent's vehicles. Appellant and his siblings distributed some of the estate property among themselves and, after holding a small estate sale, moved the balance of the decedent's belongings to a storage unit in Casper. Eventually, Appellant moved the contents of the storage unit to his home in Colorado.

[¶ 5] On October 18, 2010 Appellant's attorney, Mr. Zwickl, filed an "Application for Allowance of Ordinary Fees for Personal Representative and Ordinary and Extraordinary Fees for Attorney for the Estate," as well as the "Final Report, Accounting, and Petition for Distribution." An Exhibit "A" was attached to the final report that valued the estate's "gross value" as $478,894.94. The report showed expenditures of $358,466.26, including an advance distribution that Appellant made to himself for $16,998.82, and miscellaneous expenses of $195,452.21, $51.670.65 of which was paid to himself. The report also asked the court to approve a final payment of $26,525.69 to Appellant and his attorney. Trudy Hibsman objected to the final report, and a hearing was set for November 17, 2010.

[¶ 6] Up to this point, Appellant had not complied with his statutory duty to give the district court an inventory of estate assets within the 120–day window provided by Wyo. Stat. Ann. §§ 2–7–403(a) and 2–7–806 (LexisNexis 2011). A June 5, 2009 district court filing entitled, "Inventory and Appraisement" does not qualify to be an inventory of all assets as contemplated by the statute because it is an appraisal of a single residence owned by the decedent. Along with no proper inventory being filed, the record lacks a proper application for partial distribution as required by Wyo. Stat. Ann. § 2–7–807 (LexisNexis 2011) and an application for authority to allow Appellant to pay himself for working on the estate under Wyo. Stat. Ann. § 2–7–805 (LexisNexis 2011).

[¶ 7] On November 17, 2010 the district court held a hearing and removed Appellant as Personal Representative of his father's estate. Appellant was not present at the hearing. The court appointed Michael Zwickl, Appellant's attorney, as the temporary/interim Personal Representative, froze the estate bank account, and prohibited the transfer of any estate asset without prior court approval. In addition, the district court ordered Appellant to provide Mr. Zwickl with written statements for estate assets and incurred liabilities, verified as to truth and accuracy by Appellant, within ten days of the court order.

[¶ 8] On January 18, 2011, two months after being removed as personal representative, identifying himself as "formerly appointed personal representative," Appellant filed an "Inventory of Estate" valuing the inventory at $411,111.50.

[¶ 9] Subsequently, attorney Robert Mullen was appointed by the district court as successor personal representative of the estate. He filed his first interim report on February 10, 2011, to which the district court ordered the completion of probate beginning, to the extent possible, with an inventory and appraisal of estate assets. On July 15, 2011 attorney Mullen filed his second interim report. In that report, Mullen alleged that Appellant had violated Wyoming Probate Statutes during his time as Personal Representative. He alleged that Appellant had "failed to render his accounts in the manner prescribed by law and as required by the order of this Court, and that he has conveyed away or disposed of monies of the Estate." Mullen requested that the court, in accordance with Wyo. Stat. Ann. §§ 2–3–136 and 2–7–412 and 2–7–414 (LexisNexis 2011), "examine Jason Hibsman about the allegations contained in this Report, including but not limited to his handling of Estate monies and the payment of same to himself in order to ascertain the facts and the course best calculated to protect the interests of all parties[.]"

[¶ 10] In response, on August 24, 2011 the district court entered a notice of setting for a hearing on the second interim report and citation for Appellant. The citation was issued ordering Appellant to appear before the court on September 9, 2011. Appellant appeared at the scheduled hearing and invoked his Fifth Amendment right not to testify to most questions asked of him at the hearing. He did testify that he had reviewed the second interim report and confirmed that he had exclusive access to the estate bank account. Appellant declined to answer questions regarding disposition of estate assets, including what happened to $137,566.46 that was absent from the estate bank account. No other witness was called at the hearing, nor was any other evidence presented. The district court advised Appellant that the court could apply appropriate adverse inferences to his silence. Also, Appellant's attorney explained that "we understand the nature of this proceeding is to understand what happened with the accounts related to the estate," but were Appellant to "try to clarify for the court and for [Appellee] the accounting matters with the estate, he may run the risk of ... criminal implications[.]"

[¶ 11] On January 5, 2012 the district court entered an order stating that Appellant concealed, embezzled, conveyed away and/or disposed of monies and other property of the estate and entered an order finding prima facie evidence of the right of the estate's Personal Representative to recover an amount "not less than $137,566.46." This appeal followed.

## DISCUSSION

[¶ 12] Although neither party to this appeal raised the issue of jurisdiction, this Court has a duty to determine whether it has jurisdiction to entertain an appeal. *Mathewson v. Estate of Nielsen (In re Estate of Nielsen)*, 2011 WY 71, ¶ 11, 252 P.3d 958, 961 (Wyo.2011) (quoting *Plymale v. Donnelly*, 2006 WY 3, ¶ 4, 125 P.3d 1022, 1023 (Wyo. 2006)). The existence of jurisdiction is a question of law and our review is *de novo*. *Brown v. City of Casper*, 2011 WY 35, ¶ 8, 248 P.3d 1136 (Wyo.2011). This Court's jurisdiction is limited to appeals from final, appealable orders. *Plymale*, ¶ 4, 125 P.3d at 1023. *See also*, W.R.A.P. 1.04(a) and 1.05.

[¶ 13] W.R.A.P. 1.05 defines an appealable order as:

(a) An order affecting a substantial right in an action, when such order, in effect, determines the action and prevents a judgment; or

(b) An order affecting a substantial right made in a special proceeding; or

(c) An order made upon a summary application in an action after judgment; or

(d) An order, including a conditional order, granting a new trial on the grounds stated in Rule 59(a)(4) and (5), Wyo. R. Civ. P.; if an appeal is taken from such an order, the judgment shall remain final and in effect for the purposes of appeal by another party; or

(e) Interlocutory orders and decrees of the district courts which:

(1) Grant, continue, or modify injunctions, or dissolve injunctions, or refuse to dissolve or modify injunctions; or

(2) Appoint receivers, or issue orders to wind up receiverships, or to take steps to accomplish the purposes thereof, such as directing sales or other disposition of property.

[¶ 14] With W.R.A.P. 1.05 in mind, we no longer look at just whether or not an order was "final." *Inman v. Williams*, 2009 WY 51, ¶ 7, 205 P.3d 185, 189–90 (Wyo.2009). Rather, we consider whether an order is "appealable." As we mentioned in *Northwest Bldg. Co., LLC v. Northwest Distrib. Co.*, 2012 WY 113, ¶ 27, 285 P.3d 239, 246 (Wyo.2012) (citing *Public Serv. Commn. v. Lower Valley Power Light*, 608 P.2d 660, 661 (Wyo.1980)), this Court has previously observed that an appealable order is "a judgment or order which determines the merits of the controversy and leaves nothing for future consideration."

[¶ 15] In this case, we conclude that the order from which Appellant takes his appeal was made in a "special proceeding." *See WJH v. State (In re Interest of WJH)*, 2001 WY 54, ¶ 10, 24 P.3d 1147, 1151–52 (Wyo. 2001), where we held:

In general terms, special proceedings are those which were not actions in law or suits in equity under common law and which may be commenced by motion or petition upon notice for the purpose of obtaining relief of a special or distinct type. *State in Interest of C.*, 638 P.2d 165, 168 (Wyo.1981). They result from a right conferred by law together with authorization of a special application to the courts to enforce the right. *Id.* This court has recognized that, even in cases involving delinquency, proceedings under the Juvenile Court Act could be in lieu of proceedings under the general criminal procedure. *Id.*

[¶ 16] We further stated in *Inman,* ¶ 7, 205 P.3d at 190:

" 'Special proceedings' is a term used to distinguish litigation that is not governed by the general regime of pleadings.' ... They are distinguished from other civil actions by the manner of pleading, practice and procedure prescribed by law." *Barber v. Barber*, 2003 OK 52, ¶ 6, 77 P.3d 576, 579 (Okla.2003); also see 39B Words and Phrases, "Special Proceeding" 416–447 (2006); 1A C.J.S. Actions § 115 (2005).

We are satisfied that the instant case involves a special proceeding as contemplated by W.R.A.P. 1.05. The court held a hearing, pursuant to notice and citation, for consideration of the second interim report of the Personal Representative.

[¶ 17] The more rigorous requirement of W.R.A.P. 1.05, however, is that the order affects a "substantial right." We do not discern that a substantial right was affected here. In our jurisprudence, the most prevalent cases affecting "substantial rights" in "special proceedings" are those dealing with parental rights and child custody or criminal defendants' rights. Obviously, that is not the case here. There was no final judgment against Appellant, nor any criminal findings against anyone. The proceeding appealed here merely determined a prima facie case that the Personal Representative could initiate litigation to determine if there was a wrongful taking of at least that amount of money. Accordingly, this Court does not have jurisdiction to decide this matter on appeal.

## CONCLUSION

[¶ 18] Although a special proceeding occurred, no substantial right of Appellant's was affected by the district court's decision, and thus this Court lacks jurisdiction to hear the instant case on appeal. Accordingly, it is hereby dismissed.